UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDREA WILSON, | ) | CIV.  05-4158-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | DEFENDANTS' MOTION FOR |
| O'GORMAN HIGH SCHOOL; | ) | SUMMARY JUDGMENT |
| SHAWN BAUER; and | ) | |
| LANA BAUER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Andrea Wilson, was injured in a gymnastics accident during an O'Gorman High School gymnastics practice.  Wilson brought suit against defendants, Shawn Bauer, Lana Bauer, and O'Gorman High School, alleging that her injury was the result of defendants' negligence.  Defendants move for summary judgment on Wilson's negligence claim.

**FACTUAL BACKGROUND**

Andrea Wilson was an accomplished gymnast, who began the sport at a very young age.  When she moved to Sioux Falls, South Dakota, in 1997, Wilson joined All American Gymnastics and competed in club gymnastics. Wilson intended to compete in collegiate gymnastics at Cornell University in Ithaca, New York.  In addition to club gymnastics, Wilson also intermittently participated in high school gymnastics with O'Gorman High School.

During her junior year of high school, Wilson competed at the highest level of club gymnastics.  One of the events in which Wilson competed was the

uneven bars. An uneven bar routine consists of a number of different skills, selected for their difficulty and for the fulfillment of requirements. One of the skills that Wilson learned during that year was a move known as the reverse hecht, also known as the Tkatchev. The reverse hecht is a release move performed on the higher bar of the uneven bars, wherein a gymnast releases from the bar while rotating over the top of the bar, and catches the bar after her legs have passed beneath her. The reverse hecht is a high difficulty skill. Wilson was originally taught the reverse hecht by Gene Luke, her club gymnastics coach and the owner of All American Gymnastics.

Near the end of Wilson's junior year she dislocated her elbow, which rendered her unable to compete or practice on the uneven bars. Subsequently, when Wilson was able to work on the uneven bars, she discovered that she had "lost" her ability to do the reverse hecht, because she was no longer able to perform the move with the consistency she had before her injury.

During her senior year at O'Gorman, Wilson decided to compete in both club and high school gymnastics. Wilson would typically attend high school practice after the school day, and then practice with her club team immediately after. Both practices were held at the All American Gymnastics facility, which O'Gorman leased during its practice time. During that year, Wilson worked to relearn the reverse hecht. On January 22, 2003, Wilson was practicing the reverse hecht during her high school practice. O'Gorman coach

2

Shawn Bauer was working with Wilson on the move.  Bauer had previously been an assistant coach at All American Gymnastics and had worked with Luke.

Wilson attempted the maneuver a number of times that day, with Bauer spotting her.  To spot the move, Bauer stood behind the low bar, which was the direction Wilson moved when she attempted the skill.  See Docket 22, Ex. 8.  Bauer was positioned so that he could prevent Wilson's momentum from causing her to collide into the low bar if she missed the catch.  During Wilson's session on the uneven bars, Bauer at one point summoned Luke to observe Wilson's attempts and Bauer conferred with Luke regarding Wilson's technique.  Luke observed between one and five attempts by Wilson to perform the reverse hecht and discussed those attempts with Bauer.  Luke Depo. at 92-99, Bauer Depo. at 160-61.

The exact number of times Wilson attempted the reverse hecht on January 22, 2003, is disputed.  Wilson asserts that she attempted the move as many as thirty times that day.  Wilson Depo. at 91-94.  During the final attempt, Wilson released the bar late, and consequently did not rotate her body, causing her to land on her back.  As a result of the accident, Wilson was severely injured, and she lost the use of her legs.  In Count 1 of her complaint,

3

Wilson asserts a claim of negligence against Shawn Bauer, Lana Bauer, and O'Gorman High School.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set

4

forth specific facts by affidavits or otherwise showing that genuine issue

exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.    Negligence

To establish negligence, as alleged in the first count of the complaint,

Wilson must show: (1) a duty on the part of defendants, (2) the failure to

perform that duty, and (3) an injury to Wilson resulting from such a failure.

Kuehl v. Horner (J.W.) Lumber Co., 678 N.W.2d 809, 812 (S.D. 2004) (quoting

Stevens v. Wood Sawmill, Inc., 426 N.W.2d 13, 14 (S.D. 1988)).[1]  The first

element of a negligence claim—the existence of a duty—is typically a question

of law to be decided by the court.  Hoekman v. Nelson, 614 N.W.2d 821, (S.D.

2000) (citing Tipton v. Town of Tabor, 538 N.W.2d 783, 785 (S.D. 1995)).

Defendants do not contest the existence of a duty under the first element, and

the court finds that defendants did have a duty to Wilson for purposes of

establishing the first element of Wilson's negligence claim.

Defendants and Wilson do dispute the applicable standard of care that

Shawn Bauer owed Wilson as her coach under the second element.

Defendants urge the court to adopt the standard promulgated by the

California Supreme Court in Kahn v. East Side Union High School District, 75

---

[1]This court has diversity jurisdiction over this case pursuant to 28 U.S.C.
§ 1332.  A district court sitting in diversity jurisdiction must apply the
substantive law of the state in which it is located, in this case, South Dakota
law.  Hammonds v. Hartford Fire Ins. Co., 501 F.3d 991, 996 (8th Cir. 2007).
Neither party disputes that this case is governed by South Dakota law.

P.3d 30 (Cal. 2003).  In <u>Kahn</u>, the court noted that the general proposition in California courts was that a "coach owes a duty of care not to increase the risk of harm inherent in learning an active sport[.]"  <u>Id.</u> at 39.  The court in <u>Kahn</u> ultimately held:

> In order to support a cause of action in cases in which it is alleged that a sports instructor has required a student to perform beyond the student's capacity or without providing adequate instruction, it must be alleged and proved that the instructor acted with intent to cause a student's injury or that the instructor acted recklessly in the sense that the instructor's conduct was "totally outside the range of the ordinary activity" involved in teaching or coaching the sport.

<u>Kahn</u>, 75 P.3d at 43 (quoting <u>Knight v. Jewett</u>, 834 P.2d 696, 710 (Cal. 1992)).

Wilson argues that the "reckless" standard in the context of a coach-athlete relationship is not supported by South Dakota law.  SDCL 20-9-1 provides:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

<u>See also</u> <u>Wildeboer v. South Dakota Junior Chamber of Commerce</u>, 561 N.W.2d 666, 669 (S.D. 1997) (noting that SDCL 20-19-1 is a codification of the common law of negligence).

The South Dakota Legislature has never acted to modify the negligence standard set forth in SDCL 20-9-1 as it applies to the coach-athlete relationship, although it has acted to modify the standard of care in other contexts.  <u>See</u> SDCL 42-11-2 (limiting the liability for injuries resulting from

"the inherent risks of equine activities"), see also SDCL 32-20A-21 (limiting liability for private landowners who allow snowmobilers on their property).  In light of the South Dakota legislature's lack of guidance on the issue, defendants argue that the South Dakota Supreme Court's decision in Gasper v. Freidel, 450 N.W.2d 226, 232 (S.D. 1990) supports their argument in favor of adopting the Kahn standard.

In Gasper, a student was injured while training in a public school's weight facilities and subsequently brought suit against his coaches.  Gasper, 450 N.W.2d at 228.  The trial court granted defendants' motions for summary judgment based on sovereign immunity grounds.  Id.  The student appealed the court's ruling, arguing in part that his coaches were not protected by sovereign immunity because they were performing a ministerial act.  The court held that the:

> [C]oaches were carrying out the important function of conditioning student/athletes for all sports.  For this court to second guess Freidel's and Meyer's judgment on how to supervise and train athletes would infringe on the executive branch of the government.  Most importantly, imposition of liability would impair the free exercise of discretion.  No person will want to be a coach if his or her judgment in supervising athletic training is continually open to lawsuits.  In all sporting events, there is the potential for injury, especially in the contact sports.  No matter how well a coach trains an athlete, there are always unexpected events which may produce an injury.  This court does not want to position itself to continually decide whether the string of athletic injuries that occur every year are the result of coaching negligence.  And, while we realize that there is some harm done to the public, student athletes who go out for sports know there are attendant dangers.  Injury is one of those risks and athletes accept that as part of the price of participating in sporting events.

7

> Further, we would point out, that [the coaches] actions are
> distinguishable from what we have defined as ministerial acts . . .

Gasper, 450 N.W.2d at 232.

Although the South Dakota Supreme Court's above quoted statement in Gasper does in some ways resemble the logic of the California Supreme Court in Kahn, the statement in Gasper is dicta. Further, the court in Gasper was faced with an entirely different issue, namely whether or not the discretionary function test for sovereign immunity applies. In this case, defendants are private, not state actors, and therefore the sovereign immunity analysis is not relevant to this court's decision.

Defendants have provided this court with no authority to suggest that the South Dakota Supreme Court would adopt the standard set forth in Kahn. In fact, in Rantapaa v. Black Hills Chair Lift Co., 633 N.W.2d 196 (S.D. 2001), the court rejected an attempt by Lawrence County to adopt a lesser standard of care for ski resorts, holding that such a law was in direct conflict with SDCL 20-9-1. The same concerns at issue in Rantapaa, namely that holding persons connected to sporting activities to the same standard of liability as others would chill the opportunity for sport, are at issue in this case. Accordingly, the court finds that the South Dakota Supreme Court would not adopt the Kahn standard, but rather would apply the general negligence standard.

8

Although this holding subjects defendants to the common law negligence standard, the court notes that defendants can avail themselves of the defenses of assumption of risk and contributory negligence.  Because California is a pure comparative negligence state, these defenses are unavailable there.  See Knight, 834 P.2d at 699-705 (citing Li v. Yellow Cab Co., 532 P.2d 1226 (Cal. 1975)).  The availability of the assumption of risk and contributory negligence defenses in some ways blunts the application of the general negligence statute to the coach-athlete relationship.

Accordingly, the court finds that to succeed on her negligence claim at trial, Wilson must demonstrate that defendant Bauer failed to use reasonable care as Wilson's gymnastics coach.  Viewed in the light most favorable to Wilson, the facts are that Wilson attempted an advanced gymnastics maneuver as many as thirty times on the day that she was injured.  Further, her coach, Shawn Bauer, attempted to instruct her on the reverse hecht even though he was not trained in the maneuver.  Finally, despite her repeated failed attempts, Bauer did not move her to the foam pit where she could more safely practice the move.  Under these circumstances, the court finds that there is a question of material fact with regard to whether Bauer failed to meet the standard of care.[2]

---

[2]Defendants argue that Bauer cannot be found to be negligent in this case because Wilson's accident was not "foreseeable."  See Docket 46 at 10 ("For a gymnast that has done this maneuver countless times, it is simply

Defendants also argue that summary judgment is appropriate because Wilson's injury was not the result of any negligence by defendant, under the third element.  Defendants argue that because Bauer was in the correct position to spot Wilson's attempt at the reverse hecht and because there was nothing that Bauer could do from that position to prevent Wilson from injuring herself, Bauer is not the proximate cause of Wilson's injury.  Defendants' position, however, does not fully address Wilson's theory of negligence in this case.  Wilson alleges that Bauer improperly allowed her to practice a high difficulty move that he was not properly trained to teach.  Wilson further alleges that Bauer should not have allowed her to attempt the maneuver as many as thirty times, and because of Wilson's limited success Bauer should have moved her to the foam pit.  Wilson alleges that it was the result of Bauer's negligence that she was in a position to injure herself.  Based on these allegations, the court finds Wilson has alleged facts sufficient to create a material dispute of fact regarding the proximate cause of the accident.

---

beyond comprehension that she would ever do something like that.")  The court does not accept defendants' contention that it was unforeseeable as a matter of law that Wilson would make a timing mistake when attempting to relearn the reverse hecht.  Accordingly, to the extent foreseeability is relevant to Wilson's negligence claim, the court finds that foreseeability is not an appropriate basis on which to grant summary judgment.

10

II.     **Assumption of Risk**

Defendants argue that summary judgment is appropriate because
Wilson assumed the risk of injury by participating in gymnastics.  Under
South Dakota Law, assumption of risk is an affirmative defense to a negligence
claim.  Dodson v. South Dakota Dept. of Human Services, 703 N.W.2d 353,
355 (S.D. 2005). To prevail on an assumption of risk defense, defendants must
demonstrate: (1) that Wilson had actual or constructive knowledge of the risk;
(2) that Wilson appreciated the character of the risk; and (3) that Wilson
voluntarily accepted the risk, given the time, knowledge, and experience to
make an intelligent choice.  Goepfert v. Filler, 563 N.W.2d 140, 142 (S.D.
1997).

Defendants argue that Wilson knew that the sport of gymnastics could
cause injury, in part because both she and another gymnast who competed in
Sioux Falls had suffered a serious accident during a vault event.  Wilson
argues that although Wilson knew the sport of gymnastics carried with it
inherent risks, she did not assume the risk that her coach would put her in a
situation of enhanced danger.

In the context of a negligence claim, the South Dakota Supreme Court
has found that "although one may assume the risk of the negligence of
another if he is fully informed of such negligence, one is not, under the
doctrine of assumption of the risk, bound to anticipate the negligent conduct

11

of others." <u>Ray v. Downes</u>, 576 N.W.2d 896, 900 (S.D. 1998).  Wilson has

alleged that Bauer acted negligently, and it was this negligent conduct which

was the proximate cause of her injury.  In this case, the court finds that there

is a material question of fact whether Wilson knowingly assumed the risk that

Bauer would act negligently.  Accordingly, defendants' motion for summary

judgment on that ground is denied.

**III.      Contributory Negligence**

Defendants argue that they are entitled to summary judgment because

Wilson was contributorily negligent when she released the bar "way too late."

"Contributory negligence is negligence on the part of a plaintiff which, when

combined with the negligence of a defendant, contributes as a legal cause in

the bringing about of the injury to the plaintiff." <u>Steffen v. Schwan's Sales</u>

<u>Enterprises, Inc.</u>, 713 N.W.2d 614, 619 (S.D. 2006) (quoting S.D. Pattern Jury

Instruction 11-01).  Contributory negligence is an affirmative defense to a

negligence claim.  <u>Dodson</u>, 703 N.W.2d at 355 (S.D. 2005).  The South Dakota

Supreme Court has repeatedly held that issues of assumption of risk and

issues of contributory negligence "are for the jury in all but the rarest of

cases[.]"  <u>Stone v. Von Eye Farms</u>, 741 N.W.2d 767, 770 (S.D. 2007) (quoting

<u>Pierce v. City of Belle Fourche</u>, 624 N.W.2d 353, 356-57 (S.D. 2001)).

The court does not find that the facts of this case support defendants'

motion for summary judgment on the basis of contributory negligence.

Although Wilson has stated that she released the bar late, the jury could find that that release was not a breach of her duty "to protect [herself] from injury." <u>Wood v. City of Crooks</u>, 559 N.W.2d 558, n.3 (S.D. 1997). For example, the late release that caused Wilson injury could be found to be an inevitable result of an athlete attempting a difficult maneuver or the result of negligent coaching decisions. Accordingly, defendants' motion is denied.

Based on the foregoing, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 44) is denied.

Dated June 26, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE

13